016-1805, Bear Creek Technologies v. Cisco Systems. May it please the Court, my name is Anthony Mealy and I represent Bear Creek Technologies. The 722 patents claimed discriminator determines whether an already IP-converted given calls destination is on an IP network or another phone network. The Board erroneously concludes that the AWAMI communications server corresponds to the discriminator by, one, inflating a program 31 from a communication terminal into the communications server, thereby modifying AWAMI. But even if the Board was wrong about the program 31 being part of server 20, why does that error affect whether AWAMI discloses the relevant limitation given that Bear Creek had admitted below that the 722 patent itself gives no guidance on how the discriminator works? That last part was a quote from the appendix where you said that to the patent office. In what part of the appendix? 4204. That's argument made before the patent office. It characterizes the discriminator, but there's replete mentioning and references to how the discriminator works in reference to the specification. In the briefing, the specification shows, for example, with reference to figure 13, specifically, which is corner of that diagram that shows how and where the determination occurs. Is that claimed? That statement that was made in the prosecution of that location you cited, Your Honor, was a statement regarding whether the specification showed how the discriminator works. The claim itself is very clear as to what the discriminator is doing, and it's very clear as to when it's doing it. This invention has to do with a situation where you're setting in course this call to be an intellectual. Just so I understand your argument, what are you telling me I'm supposed to discern from figure 13? So what happens is figure 13 shows where the discrimination occurs in one embodiment. What happens is if you go back to figure 11, which relates to figure 13, a phone call comes in the upper left-hand portion of that diagram into an Internet server. The Internet server processes that signal, and you see at the top of figure 13 that signal's coming in at the very top left-hand portion. And then it arrives at a determination step, which is 13-16, where the program determines whether the discrimination occurs. The difference between how this works versus how IWAMI works is in IWAMI the user specifies one type of input which predestines the determination to be a local area network call, and then it specifies another input, which would be a regular telephone number, which predestines it to be a telephone number. But there's still, in IWAMI there is a determination in figure 5 of IWAMI that then makes a determination as to whether it's an outside phone call or it stays within the LAN. In step 13-16 of the 722 patent, what happens is you look at the, and previous to that there's step 13-15, what happens is the software looks at the destination phone number and then determines whether or not it is an internet protocol call, which means it would stay internet protocol, or it's another phone network or PSTN call. But the language of the claim is clear in the timing of the discrimination, and it's also clear in that discrimination happens to an already IP converted given call. And those aspects cannot be treated by the way the board associates the configuration of the communications server. Do you think the representative claim requires that a server or a particular component perform the network discrimination limitation? The way the claim is set right now, it doesn't require explicitly that. So it requires the function to be performed, but it doesn't require a particular component to perform that function? It doesn't require a specific component. It requires that it occur within the network at a particular time and location. So I guess my point comes back to, if the claim itself doesn't require a particular component to perform the function, why does it matter if the board got Iwami wrong and if Program 31 was not actually part of Server 20, as long as it's still a function that's occurring? Well, moving Program 31 without an explanation as to how you would move that into the communications server doesn't fix anything, so it doesn't... But wait, you just said that the representative claims don't require any particular server or any particular component to actually perform the network discriminator limitation. It's just a functional requirement. It has to be performed, but it doesn't tell you who. So why does it matter whether the board got wrong in Iwami, who is performing it? There's structure that's required in the claim. It's not strictly functional, and the structure involves a specific physical and time location where these signals arrive at the discriminator and the discriminator happens at a particular time. Also, the discriminator is doing a discrimination as to whether this call is going to be routed as an IP call or another phone network call on a call that's a given call that's already IP converted. So this is a call that's coming from an IP pipe. It's not like what happens with Iwami where you have the communications server processing calls that are coming from an IP pipe, which are always sent to a public phone, and then the only time a call comes into the communications server in Iwami is when it's going to an IP pipe is when it's coming from a public phone. And when it comes from a public phone, that's not an already IP converted call. So that cannot correspond to the claimed discriminator function. Do you have anything further? Yes. Well, I think what's important is that the timing of the way the communications server acts is clearly required in figure 125 where it's clear within that figure of Iwami that the determination that's made by Iwami happens before conversion to IP signal occurs when the signal is then sent off to the communications server. This timing argument is the one that Cisco argues you waived by never raising it below. Can you tell me where you did raise it below? The argument was raised below in the briefing, the original appeal briefing to the board, where it was emphasized that the user, with reference to White, there was an argument with reference to this other reference that the determination didn't meet the timing aspect because the user was inputting the information. So that was not occurring after an IP conversion. And then what happened was the counsel for Bear Creek explained that Iwami had the same deficiency. And remember that the examiner had applied numerous rejections based on numerous references and so there was some shorthand that was used. Another thing that the counsel did to handle that argument was they pointed out in a footnote, which is shown in appendix 4094, note 27, that whenever there was an argument with respect to the discriminator, it was effectively referring to the entire limitation and all of the language associated with that limitation. I'm having a little bit of a hard time following you. You're saying this paragraph on page 4102 where you're talking about an entirely separate reference is enough to preserve your argument on why Iwami also doesn't do it? No, what happened was, what I'm saying is that there was a specific reference in discussing Iwami that said that Iwami has the same exact deficiency, that Iwami is like White. Where do you say that? At the bottom of page 8 of the reply brief, there's a reference to appendix 4251. That's the oral argument, hearing transcript before the board. You can't raise an argument for the first time in oral argument at the hearing. I'm sorry, earlier appendix 4102? That's where we are now, 4102. That's the discussion of White. And what they said was, what counsel said was Iwami describes a system that, like White, requires the user to discriminate between telephone or internet lines. When the user discriminates between telephone and internet lines, the timing aspect is not met because it occurs before there's been a conversion, an IP conversion of the call. Okay, you're into your rebuttal time. Would you like to save the remainder? Mr. McCombs? Good morning, Your Honors. May it please the Court. Bear Creek's appeal logic is faulty. The appeal in this case is premised on ignoring the teachings of the claimed discriminator functionality of Iwami because in Bear Creek's view, there are other parts of Iwami that it believes operate differently than the portions cited below. This logic fails because the explicit teachings that the board did rely upon, the abstract and the flow chart steps of Figure 5, they are not erased or contradicted or discredited by any other aspects of Iwami. The board's conclusion that the claimed discriminator provides... Page 1 was part of server 20 as opposed to communication terminal 10. No, I don't because Figure 5 is stated in appendix page 7 below the... Show me what you'd like me to look at. I'd like you to look at appendix 7 where it says, Figure 5 is a teaching of voice communication control processing. Appendix 7. Figure 5 illustrates voice communication control processing performed by voice communication program 31. Yes, so that's a teaching of voice communication control processing. As far as the program itself, the location of the program is not critical to the claim. The program 31 is an additional teaching of what is stated in the abstract. The server in the abstract is a computer. A computer runs on software. The location of where that program is is not pertinent to the broader teaching of performing the discrimination function that the abstract clearly says is performed. You can view these as two consistent teachings. They're separate clarifying teachings of the same function. To the extent that the program 31 is described in the specification as being contained within the terminal, that does not change the teaching of the abstract. In fact, it's entirely consistent. I understand your argument that the claim doesn't require a particular component be the one that perform. But are you telling me that I'm not appropriately reading the board's decision on page 6 when it says program 31 is part of communication server 20? Because I think it comes across pretty clearly. I want to make sure you're answering my question. Because I don't think that it dooms your case if the board misrecognized the location if the location is not a claim requirement. But are you telling me I'm wrong to be even looking at this board opinion as having misunderstood where program 31 is located? I think it could be read either way. I think it could be read as implying that program 31 is in the terminal. But I don't think that the board considered that important as far as the broader teaching. What about page 6 would suggest to me that program 31 is located in the terminal, which is element 10, as opposed to in the server, which is element 20? Yes. What sentence in here, since it mentions server 20 multiple times, which sentence would you say shows that they really understood it to be located in 10? As far as whether it's located in 10 versus the abstract, server 20 that is, you could read this as interpreting this as the board viewing this program to be within the terminal. But again, I think that's a box-drawing exercise because I don't think it matters where the discriminator function is performed in the claim. I think that the teaching in the abstract is clear, and it's clear that the teaching of the discrimination function that's performed by the server 20 would be software. It wouldn't have to be this particular program 31 because the abstract statement in teaching stands on its own. The conclusion that the board reached on appendix 7, that because the server 20 of AWAMI determines if the address of the other party is connected through the LAN 1 or the public network 3, the conclusion was that AWAMI teaches the discriminator functionality. So I don't believe that the location of the discriminator, as it relates to figure 5, discredits or undermines that teaching. We're looking at what the broader teaching of the reference is. With respect to the second point, AWAMI's discrimination does happen after the transmitted media is converted to IP-addressed media. Bear Creek's argument on this point, to the contrary, is flawed because it's confusing call request transmitted media with voice payload data. The transmitted media was consistently treated throughout the proceeding below and the related litigation by Bear Creek before the district court to include converting call requests specifically into IP-addressed media. All of the examiner-cited portions of AWAMI pertain to converting call requests when they're referring to this claim element. The examiner did recognize the difference between voice payload and call requests. And this makes sense because the voice payload doesn't exist until after you've routed the call and begin talking. The transmitted media being a call request was clear based on the examiner adopting the construction that Bear Creek had advanced in the litigation, which is that the transmitted media pertains to the destination information or the pre-payload phase, which is the call request. And even as well, at Bear Creek's own brief in this case, appeal brief at page 23, Bear Creek concedes that the specification shows the transmitted media at this stage of a call is the outbound telephone number. So the argument that Bear Creek's presenting in its reply brief on this point is misleading because the reply brief at page 5 crops off step 123 in figure 5. And step 123 is where the voice communication request is generated and converted to IP-addressed media, which happens right before the claim discrimination step. Can you turn to and address the timing requirement argument, please? Yes, so the timing, with regard to the timing, again, the timing occurs where the communication request is generated. That is where the transmitted media, the call request, is converted to IP-addressed media. And if you look at the step 123 that was cropped off of their figure 5 presentation and their reply brief at page 5, it is generating the voice communication request where that gets put into the packet structure shown in AWAMI's figure 13. That packet structure is, as AWAMI says at column 17, lines 45, is being put into TCP IP protocol. Do you believe the examiner or the board addressed this timing issue? Yes, Your Honor. I think that there were quotes specifically. Let's look on your red brief at page 23. Yes. Do you have your red brief handy? Yes. Tell me when you get to page 23. Yes. Are you there? Yes. Do you see the big quote where you said, for example, the examiner addressed this timing feature directly, the rejection states? Yes. And do you see that quote? Yes. And then you see the appendix site afterwards on the next page, 5889. So we're on page 23 and 24. Yes, the large quote that you say is from the examiner's rejection. Yes. That shows where he addressed it. Yes. You do realize that quote's not from the examiner's rejection, it's from your petition. Yes, and that's a mistake in the record. But it's an enormous mistake because you're alleging to this court that the examiner and the board addressed this issue and the only citation you have, which you claim to be the examiner's statement in the record, is in fact a quote from your brief below, not a quote from any office action. And we went through every office action, even though you only gave us excerpts. We dug into this entirely, and there's no office action that I can find where an examiner said anything like this. It's at appendix 0449, which contains the rejection. 0449, which contains the rejection, and that rejection incorporates request exhibit BB, which was the page that was cited. 0449. Which is at page 44 of that office action. Okay, now where? Appendix page 449. Yes. At the bottom of the page it says claims 1-12 and 14-22 are rejected under 35 U.S.C. section 103 as being unpatentable over Olami in view of Barats. See request exhibit BB, which is incorporated by reference as to those claims. And those pages are the citation to page 5889. Okay, I apologize then, but I still think that you had an obligation to make this a lot clearer to the court because you cite me, you claim the examiner rejected it and included a quote, and you say that quote is from his rejection, and then you cite me to a page in the appendix which is only your brief, and it didn't look to me like the examiner had done that. And we searched all of the references for this quote and, of course, couldn't find it. But you're absolutely right. If he incorporated by reference your petition request, which, by the way, is really weird. I don't know if he, have you ever, I've never seen an examiner, because he incorporates by reference your request, but what does that mean? I mean, does that mean he's making fact findings completely in line with the things you advocate about it? It certainly leaves me a bit confused. I think that in this case the examiner had quoted portions of the text later on as being incorporated from the original claim chart, which was at Exhibit BB, and that's how that occurred. And as far as the specifics of where this argument was also contained, I think there are other portions in the record on page 24 of our brief that show that the discrimination is applied specifically. What exactly is Request Exhibit BB? Request Exhibit BB is a claim chart that shows the mapping of the claim elements to the WAMI reference. Is that the thing that appears at 5889? Yes, Your Honor. I don't even know what to make about that, but I would definitely urge you, I mean, I don't know if you're right that should be read as the examiner making a fact finding consistent with what you say there. He's incorporating by reference your arguments. I don't know if that means he's incorporating them as in these are an explanation of your arguments or if he's adopting them. Incorporating a document by reference is different from adopting the arguments made in that reference and making fact findings accordingly. I don't know what to make of it. You've certainly done a better job of diffusing my unhappiness with your reference by pointing to this, but in the future you've got to walk a court through this. I mean, you cited a portion of your own brief and said this was a statement made by the examiner in rejection, and it's not. Yes, Your Honor, it's one step removed. At best for you it's one step removed. I'm not sure I actually agree with you that this incorporation by reference means that he was making a fact finding consistent with your argument. I don't know what it means, see request exhibit BB, which is incorporated by reference as to those claims. I don't even know what to make of that. It's very strange. Have you ever seen an examiner do this? Yes, Your Honor, in reexamination practice that's fairly common in these large reexamination requests where you have a right of appeal notice, for example, that's over 100 pages long. It's fairly common to do that. Why wouldn't they say we incorporate by reference this document and accept the arguments or make fact findings consistent with something? I mean, they just reference your exhibit and say it's incorporated by reference. Very strange. If you have anything further, go ahead, I'm done with that. No, I have nothing further, Your Honor. Okay, thank you very much. What's clear by the board emphasizing the communication server as corresponding to the claim discrimination is that the board is trying to address the timing aspect of the claim. But neither the examiner nor the board specifically shows something that addresses that timing aspect. Even if you look at the communication request, that communication request is not addressed and sent until after there's been a determination as to whether there's an IP or another network. And that's shown in Figure 5, and there's a snippet of that at page 5 of our reply brief. And Step 123 that my brother pointed out does not involve an IP addressing. You cannot IP address to go somewhere until you know the address, and that occurs at Step 125, which is a later step. In fact, the communication request 126 is shown in Fig 5, occurs after the determination of what kind of path you're going over. In 2011, Bear Creek filed this lawsuit against some of the defendants in some related litigation. In September 2012, this reexam proceeding was started, was requested after two earlier reexams challenging the patent, resulted in the patent being valid. Over 200 pages for the action closing prosecution were issued by the examiner. Now we're six years after the original lawsuit and almost five years after the reexam. What's important about this... No, they don't raise Iwami. There's Pepe, I know one of them raises Pepe, which is one of the references in some of the rejections asserted in this case. The invention involves setting a course for a phone call before you know where you're going. And that course is over an IP connection. So basically it allows you to put an internet connection at the premise and that gets you to the carrier. That resulted in a significant paradigm shift in technology. That timing is exactly the opposite of the prior art, exactly the opposite of Iwami, which determines the route before it goes. The call doesn't go anywhere, it's in the communication terminal, there's a determination as to where it's going to go, and if it's going to go to another communication terminal, it goes after that determination. If it's going to go to an outside phone, it goes after that determination. Modern landlines follow this approach, which Bear Creek invented in the 90s, while it was making and selling software to the Bell companies and to Bell Labs. It still makes and sells software that it provides to Bell Canada today. Key advantages of having that internet connection...